**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** | |
| Plaintiff, | |
| v. | Civil Action No. 18-CV-03022 (JEB) |
| **U.S. DEPARTMENT OF COMMERCE,** | |
| , | |
| Defendant. | |

Pursuant to 28 U.S.C. § 1746, I, **BRIAN D. LIEBERMAN**, hereby declare as follows:

1. I currently serve as Senior Counsel with the Information Law Division of the Office of the General Counsel for the United States Department of Commerce (DOC or Department). I have served in this position since January 2019. My responsibilities include advising the Department and its component agencies regarding requests submitted to the DOC Immediate Office of the Secretary (IOS) for records made under both the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, and litigation related to such requests. In this capacity, I routinely consult with the FOIA offices of the Department and its agencies regarding requests.

2. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, upon conclusions and determinations reached and made in accordance therewith, and

upon my personal examination of the withheld and redacted documents. I am personally familiar with the FOIA request of Plaintiff Citizens for Ethics and Responsibility in Washington (Plaintiff), which is at issue in this case.

3.    This Declaration is being submitted in support of DOC's Motion for Summary Judgment. In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this Declaration and the attached index (Exhibit 1) provide the pertinent background, the procedural history of this request, and the justifications for DOC's withholding of documents pursuant to FOIA Exemptions 4, 5 and 6. See 5 U.S.C. § 552(b)(4), (5) and (6).

### Preliminary Statement

4.    Eric Branstad served in the capacity of Senior White House Advisor at DOC from January 2017 until his departure in January 2018.  On August 2, 2018, Plaintiff submitted a FOIA request to DOC seeking two categories of Mr. Branstad's communications during his tenure.  Specifically, in this request, a copy of which is attached as Exhibit 2, Plaintiff sought the following:

1)  All communications between former White House advisor to the Commerce department Eric Branstad and former Trump campaign official Rick Gates from January 20, 2017 to March 1, 2018.

2)  All communications sent or received by Mr. Branstad that mention the defense firm Circinus.

5.    Plaintiff herein challenges the adequacy of the search performed for responsive documents and DOC's withholding of information under Exemptions 4, 5 and 6. As is detailed below, however, DOC  conducted an appropriate search of Mr.

Branstad's communications that reflected the clear, specific terms of Plaintiff's request, and DOC properly withheld certain responsive information.

6. DOC applied Exemption 4 to commercial information of a confidential nature regarding a military defense contracting company, Circinus LLC (Circinus), that Mr. Branstad received from two private individuals, Mr. Gates and Thomas Hodgkins, in connection with the potential support for Circinus's marketing of services internationally. DOC invoked Exemption 5 for draft testimony and the related analysis of that testimony by a senior DOC official. DOC utilized Exemption 6 to redact from email communications personal identifying information, such as private email accounts and private phone numbers, the release of which could lead to unwanted personal contact and embarrassment or harassment.

### The History of Plaintiff's FOIA Request

7. Within several days of receiving Plaintiff's FOIA request on August 2, 2018, DOC advised Plaintiff via email that DOC had assigned its FOIA Request tracking number DOC-IOS-2018-001899. (See Exhibits 2 and 3 respectively). Subsequently, by correspondence dated August 22, 2018, a copy of which is attached as Exhibit 4, DOC informed Plaintiff that its request did not comply with the requirements of 15 CFR 4.4(c), because it did not describe the second item in sufficient detail for DOC to locate responsive records with reasonable effort. DOC explained that Plaintiff must provide a date range for the second item. DOC stated that unless Plaintiff provided the requisite clarification within 30 calendar days, DOC would consider the FOIA request closed and take no further action. Six

weeks later, having received no response, on October 3, 2018, DOC advised Plaintiff that it had closed the FOIA request. (See Exhibit 5).[1]

8.  Four weeks later, on October 31, 2018, Plaintiff contacted DOC by telephone. Plaintiff's representative stated that it had not received either the correspondence of August 22nd or October 3rd. Where, as is the case here, the requester has submitted the FOIA request online, through the DOC portal for FOIAonline.gov, DOC provides all email and correspondence concerning Plaintiff's request to its FOIAonline.gov email box. Plaintiff should have received the August 22nd and October 3rd emails. Nevertheless, in the spirit of cooperation, during the October 31st call, DOC agreed to reopen Plaintiff's FOIA request, as the parties confirmed in an email exchange on October 31 and November 1, 2018, which are collectively attached as Exhibit 6.[2] Additionally, at that time, Plaintiff provided the requisite timeframe for the second part of its request, applying the same time period that it had specified for the first part of its request, January 20, 2017 to March 1, 2018.

9.  On March 29, 2019, DOC made its initial production of responsive documents, consisting of 19 pages of emails and attachments. (A copy of the correspondence is attached as Exhibit 7). Of those 19 pages, DOC withheld 16 in part and 1 in full pursuant to Exemptions 4, 5 and 6, U.S.C. 552(b)(4), (5) and (6).

10.  Following this production, DOC conducted a further search and determined that it had additional responsive documents. Thus, on June 14, 2019, DOC provided

---

[1] DOC respectfully submits that it properly closed the file, in accordance with DOC's FOIA regulations. 15 CFR 4.6(c) permits the agency to make a one-time written request for clarification and, if, such as here, the agency does not receive a response within 30 calendar days, the agency "will presume that the requester is no longer interested and notify the requester that the request will be closed."

[2] As DOC reminded Plaintiff in the March 29, 2019 email communication, under cover of which it initially produced responsive documents, a copy of which is provided as Exhibit 7, DOC has not waived its claim that it properly closed out the FOIA request on October 3, 2018.

Plaintiff with an amended production consisting of 165 pages, which included the originally-produced 19 pages. (A copy of the correspondence is attached as Exhibit 8). Of these 165 pages, DOC withheld 97 in part and 37 in full under Exemptions 4, 5 and 6.

### The Search for Responsive Records

11. DOC searched the contents of Mr. Branstad's email box and electronic calendar using terms corresponding to the two portions of Plaintiff's request for communications: "Rick Gates," "Richard Gates" and "Circinus."

12. The search of Mr. Branstad's email box resulted in 165 pages of responsive documents consisting of emails and attachments.

13. DOC advised Plaintiff of the scope of the search, including the search terms, in the June 14, 2019 email under cover of which it provided the responsive documents.

14. It is unclear why Plaintiff considers the search inadequate, as DOC based it on the specific parameters of Plaintiff's FOIA request. Plaintiff sought two distinct categories of communications: (i) those between Mr. Branstad and Rick Gates between January 20, 2017 and March 1, 2018; and (ii) communications received or sent by Mr. Branstad mentioning the defense firm Circinus between January 20, 2017 and March 1, 2018 (the timeframe that Plaintiff ultimately provided based on communications between the parties in October 2018). Thus, regarding the first item, DOC searched Mr. Branstad's email account and electronic calendar for "Rick Gates" and, as Rick is an informal version of Richard, we also searched for "Richard Gates." For the second item, DOC conducted a search using "Circinus," the name of the entity Plaintiff specified.

15. DOC tailored the search to the scope of the request, which identified particular categories of communications Mr. Branstad sent or received during his tenure at the department.[3]   Accordingly, DOC has conducted a search reasonably calculated to lead to the discovery of all responsive records.

**Justifications for the Information Withheld Under FOIA**

16. DOC carefully examined the records at issue and determined that they must be withheld in part or full pursuant to Exemptions 4, 5 and 6.

**I.    Applicability of Exemption 4**

17. 5 U.S.C. § 552(b)(4), commonly known as Exemption 4, exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."   This exemption protects information that is: 1) commercial or financial; 2) obtained from a person; and 3) privileged or confidential.

18. DOC redacted portions of 12 pages and withheld 7 pages in full under Exemption 4. (See Vaughn Index, Exhibit 1,  Lines 49 through 67).

19. To determine whether withheld information was "commercial or financial" information, DOC used the ordinary meaning of the terms and determined whether there was a commercial interest in the information. DOC found that the withheld information, concerning the company Circinus, was commercial information, because Circinus used it in its commercial and business activities to provide

---

[3] In addition, following the June 14th production, Plaintiff inquired whether Mr. Branstad had any physical files that may contain records responsive to the search.  Typically, for a FOIA request of this nature, specifically seeking communications, which are typically maintained in electronic form, DOC would not search physical files, especially of a former employee. DOC, however, did confirm to Plaintiff, through counsel, that Mr. Branstad did not maintain records in physical form, only electronic, and conducted his communications via email.

defense/military contracting and related services on an international basis. The commercial information is contained in emails between Mr. Branstad and Mr. Gates and Mr. Hodgkins, as well as attachments. (See, e.g., Vaughn Index, Lines 49-51 and 66). This information is also present in a number of email communications between Mr. Branstad and other government officials regarding Circinus, and the related attachments. (See, e.g., id., at Lines 52-57, 60-61 and 64).

20. The withheld information was obtained from a "person." Rick Gates and Thomas Hodgkins, both private individuals, provided the information to DOC on behalf of Circinus. (See, e.g., Vaughn Index, Lines 49-52). Mr. Branstad then shared this information in communications with other government officials. (See, e.g., id. at Lines 62-63).

21. DOC further determined that this information is confidential, whether one characterizes its submission as voluntary or mandatory.[4] The information pertains to the company's plans and strategy for providing defense/military contracting and related services to foreign nations, which was intended for DOC review and to potentially use in support of Circinus. (See, e.g., Vaughn Index, Lines 49 and 50). Viewing the provision of this information as voluntarily, in DOC's experience, private businesses do not customarily release information of this nature concerning their business plans and strategy to their competitors or other third parties. Even if

---

[4] In a decision just released, *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019), the Supreme Court overruled the precedent established by the Court of Appeals for the District of Columbia in *National Parks & Conservation Assn. v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974). In the latter case, the court held that where a business submitted commercial information because the agency required it, the information qualified as confidential only if the government or business could show disclosure would cause substantial competitive harm. In *Food Marketing Institute*, the Court ruled that no showing of harm is necessary. For purposes of this motion, since National Parks constituted the applicable law at the time DOC made its determination, DOC presents the analysis as it used at the time, evaluating the information both in terms of voluntarily and mandatory submission.

one considers the submission mandatory, DOC concluded, release of this information concerning Circinus's international business plans and strategy would either likely cause substantial competitive harm to Circinus, on whose behalf Mr. Gates and Mr. Hodgkins submitted it to DOC, or would impair DOC's ability to obtain similar information from others in the future concerning international business plans, thus compromising DOC's role in supporting American businesses developing or expanding their operations abroad. Indeed, if Circinus (or any defense contractor) were required to share its plans for the development of international business, it could alert competitors to specific opportunities or reveal specific company strategies.

## II.    Applicability of Exemption 5

22. Exemption 5 protects "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552(b)(5). Exemption 5 has been construed to exempt documents or information normally privileged in the civil discovery context and incorporates, inter alia, the attorney-client and deliberative process privileges. As a threshold matter, the responsive records must be inter-agency or intra-agency documents in order to be protected from disclosure under this exemption.

23. The withheld information consists of (i) a portion of an internal email between DOC officials containing one official's analysis of draft testimony for John Thompson, Director of the Census Bureau, before the House Appropriations Committee's Subcommittee on Commerce, Justice, Science and Related Agencies

and (ii) the attachment to that email containing the draft testimony. See Vaughn Index, Lines 42, 43 and 46).

24. The email and attachment were forwarded for printing out by Mr. Branstad to Mr. Gates, a private individual, without authorization by the agency and contrary to DOC policy and practice. Per the correspondence, it was done due to a pressing need to get the testimony to the Secretary of Commerce quickly for review, while Mr. Branstad was in transit, and Mr. Gates' email address was used solely as a means of facilitating getting the testimony to the Secretary. To my knowledge, the email and attachment were not distributed to any private individuals other than Mr. Gates.

25. DOC determined that the portion of the internal DOC email discussing the draft testimony and the attached draft testimony constituted inter-agency or intra-agency documents.

**Deliberative Process Privilege**

26. DOC determined that certain of the responsive records contain information protected by the deliberative process privilege. To qualify for protection, the information must be pre-decisional and deliberative. The privilege serves several fundamental purposes: encouraging open, frank discussions between subordinates and supervisors, protecting against the premature disclosure of proposed policies before their adoption, and protecting against public confusion that might result from disclosure of policies and rationales that do not ultimately serve as the basis for agency action.

27. The information withheld under the deliberative process privilege consists of an internal DOC email communication in which a DOC official discusses the Census Director's draft testimony and a copy of the draft testimony. (See, e.g. Vaughn Index, Line 42 and 43). The information is predecisional because it does not represent the final testimony given by the Census Director. The information is deliberative because it involves: the analysis of proposed testimony by a DOC official for the consideration by other officials, including the Secretary. Release of this information would harm the agency's decision-making process by revealing draft testimony that was subject to further agency analysis and deliberation. Release of this information could chill others from engaging in free and fulsome analysis of positions to be taken by the agency. Agency personnel may hold back from sharing important observations, analyses and recommendations, or factual information they thought should be considered, if they knew that such deliberations would be made public, and this would seriously undermine the development of an adequate, thorough, thoughtful, soundly based assessment of testimony to be provided to Congress. No factual information can be segregated and released, because the factual information was selectively chosen to highlight certain portions of the draft testimony, and thus its release would reveal the deliberations at issue over the proposed testimony. Accordingly, the information meets the requirements for the deliberative process privilege.

**III.    Applicability of Exemption 6**

28. 5 U.S.C. § 552 (b)6), commonly known as Exemption 6, permits the government to withhold from disclosure "personnel and medical files and similar files" about

individuals when the disclosure of such information "would constitute a clearly unwarranted invasion" of personal privacy.

29. As noted above, DOC redacted personally identifiable information from 78 pages of responsive records pursuant to Exemption 6. (See Vaughn Index, Lines 1-48, 51-54, 56, 58, 60, 62, and 64-67) . The information redacted from these pages meet the definition of "similar" files, because they contain information pertaining to individuals.

30. In order to determine whether a document or portion of a document may be withheld under Exemption 6, an agency must undertake a three-step analysis. First, the agency must determine whether a significant privacy interest would be compromised by the disclosure of the record. Second, the agency must determine whether the release of the document would further the public interest by shedding light on the operations and activities of the Government. Third, the agency must balance the identified privacy interests against the public interest in disclosure.

31. DOC redacted private email addresses and private phone numbers for private individuals, private residential addresses, and the email addresses and phone numbers of employees of private businesses. DOC also redacted the work cell phone number of Mr. Branstad, a former DOC employee, which may have been reassigned to a current employee, and the work cell phone numbers of other DOC employees. The individuals involved have a significant privacy interest in not having this information made available, which could result in unwanted and unnecessary personal contact and harassment.

32. I weighed the privacy interests identified against the public interest in disclosure. The only applicable public interest under Exemption 6 is whether release of the information would shed light on DOC's activities and DOC's performance of its statutory duties. DOC determined that the private email accounts, phone numbers and similar information withheld are specific to the individuals. It will not shed light on government activities because it does not add to the public's understanding of DOC's activities. Accordingly, the privacy interests identified outweigh the nonexistent public interest.

### Segregability

33. DOC conducted a line-by-line review of the withheld information to ensure that it contained no segregable, nonexempt information. DOC has thus carefully reviewed all responsive records and released all non-exempt information to the extent possible. Some records consist of information exempt as confidential commercial information under Exemption 4 or deliberative communications subject to Exemption 5 and further segregation is not possible. In certain cases, full-page withholding proved necessary because the withheld information was so inextricably intertwined with nonexempt information such that further segregation would result in a meaningless set of words or phrases which have minimal or no information content. DOC limited the redaction of information subject to Exemption 6 to specific personally identifiable information, such as personal email accounts and cell phone numbers, the release of which could pose an unwarranted invasion of individual privacy.

## Conclusion

34.  DOC has carefully reviewed the responsive records and determined that all non-

exempt material responsive to Plaintiff's FOIA request has been released. Exempt

information has been properly withheld pursuant to FOIA Exemptions 4, 5 and 6.

Accordingly, all reasonably segregable, non-exempt information has been released

and the justification for withholding certain information has been detailed in this

declaration.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___th day of July, 2019.


BRIAN D. LIEBERMAN