UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

    *Plaintiff*,

    v.

U.S. DEPARTMENT OF COMMERCE,

    *Defendant*.

Civil Action No. 1:18-cv-03022 (CJN)

## MEMORANDUM OPINION

Citizens for Responsibility and Ethics in Washington ("CREW") requested pursuant to the Freedom of Information Act two categories of records from the U.S. Department of Commerce: "[a]ll communication between former White House advisor to the Commerce Department Eric Branstad and former Trump campaign official Rick Gates from January 20, 2017[,] to March 1, 2018," and "[a]ll communication[s] sent or received by Branstad that mention[ ] the defense firm Circinus." *See generally* Pl.'s Statement of Undisputed Material Facts in Supp. of Cross-Mot. for Summ. J. ("Pl.'s SOMF") ¶¶ 1–2, ECF No. 15-4 at 2. Commerce withheld certain information under FOIA Exemptions 4, 5, and 6, *id.* ¶ 4, and both Parties have moved for summary judgment, *see generally* Def.'s Mot. for Summ. J., ECF No. 14; Pl.'s Cross-Mot. for Summ. J., ECF No. 15. For the reasons stated below, the Court grants in part and denies in part both Cross-Motions.

## I. Background

On August 2, 2018, CREW submitted a FOIA request to Commerce seeking the two categories of information identified above. CREW states that it is interested in the requested

communications because, CREW claims, Gates contacted Branstad on behalf of the defense firm Circinus while Branstad worked at Commerce.  Compl. ¶ 8, ECF No. 1.  And CREW notes that "Gates reportedly considered Branstad a 'contact' at Commerce who could help secure the agency's endorsement of lucrative defense work by Circinus for the Romanian government." Pl.'s Mem. in Supp. of Cross-Mot. ("Pl.'s Mem.") at 2 (citing *id.*), ECF No. 15-1.

Commerce produced 165 pages of responsive records and withheld other responsive records under FOIA Exemptions 4, 5, and 6.  *See* Pl.'s SOMF ¶¶ 3–4.  Commerce argues that its searches were adequate; that its withholdings are lawful; and that it complied with FOIA's segregability requirement.  *See generally* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 14 at 6.  CREW challenges only Commerce's assertion of Exemptions 4 and 5 regarding specific documents.  *See generally* Pl.'s Mem.  Because CREW does not oppose summary judgment on the adequacy of the search, Commerce's decision to withhold of certain information under Exemption 6, or whether Commerce complied with FOIA's segregability requirement, the Court grants judgment in favor of Commerce on those grounds.

## II.     Analysis

"FOIA . . . [requires] that an agency disclose records on request, unless they fall within one of nine [narrow] exemptions." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011). "FOIA mandates a 'strong presumption in favor of disclosure,'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991))—so much so that, unlike Administrative Procedure Act lawsuits, in which agency actions are subject to arbitrary and capricious review, FOIA "expressly places the burden 'on the agency to sustain its action' and directs district courts to 'determine the matter de novo,'" *U.S.*

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### A.    Deliberative Process Privilege

Commerce has withheld two records as covered by the deliberative process privilege recognized under Exemption 5:  (1) a May 1, 2017 email in which a Commerce official discusses draft congressional testimony of the Director of the Census Bureau John Thompson; and (2) the draft congressional testimony itself, which was attached to the email.  Decl. of Brian D. Lieberman ("Lieberman Decl.") ¶ 23, ECF No. 14-1.  CREW does not dispute that these documents might normally fit within the deliberative process privilege, which "protects 'documents reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).  But, CREW argues, Commerce waived the privilege after Branstad forwarded the email to Gates, a third party outside of the government, and asked him to print the email and attachment for Commerce Secretary Wilbur Ross at the home of Tom Barrack, another non-governmental third party.  Pl.'s Mem. at 5.  In particular, Branstad asked Gates, "Can we print this at Tom[ Barrack's] house for [Secretary] Ross – almost there."  Pl.'s Ex. 1 at 00137, ECF No. 15-2.  Gates responded, "Yes.  Will do now."  *Id.*  And then he added, "Got them all for you."  *Id.*

A "voluntary disclosure . . . to unnecessary third parties" waives the "deliberative process privilege" as to "the document or information specifically released."  *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997).  Commerce argues, however, that "[t]here was no intentional, voluntary disclosure to unnecessary third parties on the part of [Commerce]."  Def.'s Reply at 9, ECF No. 18.  According to Commerce, "there has been no disclosure at all, since there is no

3

evidence that Mr. Gates looked at anything in the email beyond Mr. Branstad's request at the top of the email that he print it out, along with the attachment." *Id.* The Court disagrees. When analyzing waiver, the focus is not whether the recipient reviewed the disclosed information; instead, it is whether a disclosure occurred in the first place. *See In re Sealed Case*, 121 F.3d at 741. As a result, whether Gates reviewed or looked at the email and the draft testimony is irrelevant.

Commerce next argues that "to the extent there was a disclosure," Branstad's sending of the documents to Gates did not constitute a voluntary disclosure to an unnecessary third party because "Gates became a necessary person to be the conduit to receive the information." Def.'s Reply at 9. But even assuming that Gates was a necessary third party (i.e., that it was necessary to send Gates the email and testimony in order for those documents to be printed for Secretary Ross), the government has failed to demonstrate that it attempted to protect the information after its disclosure. An agency must take steps to protect privileged material that is commensurate with the breadth of the privilege it seeks to claim.[1] Commerce has ushered no facts exhibiting that it took any action whatsoever to remedy Branstad's disclosure to Gates (who again was not a government employee at the time)—including investigating the disclosure, contacting the individuals involved, or otherwise attempting to ensure that the privileged materials were not

---

[1] Some courts have looked to Federal Rule of Evidence 502 for guidance over waiver in the deliberative process privilege context, *see, e.g.*, *Bayliss v. N.J. State Police*, 622 F. App'x 182, 186 (3d Cir. 2015) (holding that the deliberative process privilege was not waived "because the disclosure was inadvertent, and the State took reasonable steps in preventing and rectifying the disclosure" (citing Fed. R. Evid. 502(b))); however, as other judges have noted, the text of Rule 502 is expressly limited to the attorney-client privilege and work-product protection and should not be extended to the deliberative process privilege, *see, e.g.*, *Mannina v. District of Columbia*, No. 15-cv-931, 2019 WL 1993780, at *8 (D.D.C. May 6, 2019); *see also* Fed. R. Evid. R. 502 advisory committee notes (subdiv. g) ("The rule's coverage is limited to attorney-client privilege and work product. The operation of waiver by disclosure, as applied to other evidentiary privileges, remains a question of federal common law.").

further disclosed.  As the D.C. Circuit has repeatedly held in the attorney-client privilege context, "[t]he courts will grant no greater protection to those who assert the privilege than their own precautions warrant."  *In re Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007) (citation omitted).[2]  The present record reflects that Commerce took no precautions.

In the alternative, Commerce argues that the disclosure by Branstad was unauthorized, e.g., Lieberman Decl. ¶ 24, and thus Commerce "should not be prejudiced by the actions of an employee engaged in an unauthorized act, especially in light of the well established recognition of the importance of protecting the government's decision-making process," Def.'s Reply at 10–11 (citing *NLRB*, 421 U.S. at 148–51).  While that may be true, Commerce has presented no evidence that it attempted to remedy the unauthorized disclosure once it was discovered.  Indeed, even if Commerce discovered Branstad's disclosure only as a result of its search for records responsive to CREW's FOIA request, Commerce apparently took no steps to rectify the unauthorized disclosure.  Commerce has thus waived any claim to deliberative process privilege over the May 1, 2017 email and the attached draft congressional testimony.

### B.   Confidential Business Information

Commerce has also withheld under Exemption 4 information that it contends is protected confidential business information about Circinus.  Lieberman Decl. ¶¶ 17–21.  "Exemption 4 shields from mandatory disclosure 'commercial or financial information obtained from a person and privilege or confidential.'"  *Food Mktg Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019) (quoting 5 U.S.C. § 552(b)(4)).  In *Argus Leader*, the Supreme Court identified "two

---

[2] While the scope of potential waiver is narrower in the deliberative process context, the same general principles of privilege apply.  *See In re Sealed Case*, 121 F.3d at 741 (discussing the differences between the scope of waiver in the attorney-client and deliberative process privilege contexts).

conditions that might be required for information communicated to another to be considered confidential" under Exemption 4, *id.* at 2363: the information is "[1] customarily and actually treated as private by its owner and [2] provided to the government under an assurance of privacy." *Id.* at 2366. The Court held that the first is a necessary condition but left unresolved whether the second is also necessary. *Id.* at 2363 ("[T]here's no need to resolve that question in this case because the retailers before us clearly satisfy this condition too.").

Here, CREW concedes that the first condition is met and challenges only whether Commerce meets the second. *See* Pl.'s Mem. at 8–11. CREW argues that Exemption 4 "requires a governmental assurance of confidentiality" because "the [Supreme] Court favorably cited several . . . cases that do support such a requirement, including two from this Circuit." *Id.* at 9. Commerce contests whether such an assurance is required, but also argues that the assurance can be express or implied, and that here an implied assurance was made to Circinus. Def.'s Reply at 4–7.

In the Court's view, Commerce has established that its withholding was proper. Assuming that Exemption 4 can be satisfied here only if Commerce gave Circinus some assurance of confidential treatment, *Argus Leader*, 139 S. Ct. at 2366, that assurance of confidentiality could have been either express or implied. In *U.S. Department of Justice v. Landano*, the Supreme Court interpreted the term "confidentiality" as used in Exemption 7(D), which in certain circumstances protects the identity of confidential sources used in law enforcement, and held that "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an *understanding* that the communication would remain confidential." 508 U.S. 165, 171–72 (1993) (emphasis altered). As a result, the Supreme Court noted, "[t]he precise question before

6

us, then, is how the Government can meet its burden of showing that a source provided information on an *implied* assurance of confidentiality." *Id.* at 172 (emphasis added).  Implied assurances of confidentiality can therefore satisfy Exemption 7(D), and the same idea should apply here.  *See Law v. Siegel*, 571 U.S. 415, 422 (2014) (stating the "'normal rule of statutory construction' that words repeated in different parts of the same statute generally have the same meaning." (citations omitted)); *Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that 'identical words used in different parts of the same act are intended to have the same meaning.'" (citation omitted)).  Recent guidance issued by the Department of Justice's Office of Information Policy came to the same conclusion, explaining that, "in the context of Exemption 4, agencies can look to the context in which the information was provided to the government to determine if there was an implied assurance of confidentiality."  Office of Information Policy, *Exemption 4 After the Supreme Court's Ruling in Food Marking Institute v. Argus Leader Media*, U.S. Dep't of Justice, https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media (last updated Oct. 4, 2019).

Here, Commerce states that "the information withheld consists of confidential commercial information Circinus used in its commercial and business activities to provide defense/military contracting and related services on an international basis."  Def.'s Reply at 6 (citing Lieberman Decl. ¶ 19).  It further notes that "public dissemination of the information withheld would give insight to competitors of Circinus's pursuit of opportunities with a particular foreign government, its capabilities[,] and the manner in which it markets its capabilities."  Suppl. Decl. of Brian D. Lieberman ¶ 6, ECF No. 17-2.  And in Commerce's view,

> [i]f Circinus or any other business could not be assured that [Commerce] would treat as confidential information about its

7

> commercial plans and operations submitted to [Commerce] to support the business in its efforts, then [Commerce] would not be able to sustain the trust of the American business community, which is vital to [Commerce's] mission to facilitate the growth of American commerce domestically and abroad.  [Commerce] has been able to sustain this trust because businesses understand that [Commerce] carefully guards sensitive commercial information and only uses it to further [Commerce] efforts to help these businesses expand their reach.

*Id.* ¶ 7.  The context in which Circinus provided Commerce information—to grow its business in foreign markets—supports the notion that it did so under an implied assurance of confidentiality.  Without such an assurance, companies like Circinus would not seek Commerce's assistance because the information they provided could be revealed by simply submitting a FOIA request.  The information thus could easily fall into the hands of competitors or other entities that sought it.

CREW disagrees and argues that "Commerce has failed to demonstrate that the 'specific circumstances' here warrant finding an implied assurance of confidentiality."  Pl.'s Reply at 7.  In its view, Commerce has failed to justify the withholding based on the specific factors laid out by the Office of Information Policy guidance.  *E.g. id.* (arguing that Commerce did not provide details about its historical "treatment of similar information" and "its broader treatment of information related to the program or initiative to which the information relates" (quoting Office of Information Policy, *Exemption 4*, *supra*)).  But the guidance issued by the Office of Information Policy on Exemption 4 is just that—guidance.  In the Court's view, Commerce has demonstrated that the documents were provided by Circinus under and implied assurance of confidentiality.

CREW is correct, however, that Commerce must provide any information to CREW that it withheld under Exemption 4 yet has elsewhere disclosed to CREW or is otherwise available in the public domain.  As CREW states, "[i]nsofar as the identity of the foreign government, as well

as Commerce's endorsement of Circinus to provide defense work for that government, are already in the public domain, the identity cannot be deemed confidential under Exemption 4." *Id.* at 8.  Beyond this specific information, the record does not reflect that other information that Commerce has withheld under Exemption 4 has been disclosed elsewhere, and CREW does not argue to the contrary.

### III.     Conclusion

For the reasons discussed above, Commerce's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** and CREW's Cross-Motion is **GRANTED IN PART** and **DENIED IN PART**.  An Order consistent with this Memorandum Opinion will be issued contemporaneously.

DATE:  August 14, 2020

*[signature]*
CARL J. NICHOLS
United States District Judge